UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 9:21-cv-80889-RKA

| | |
|---|---|
| ELI REISMAN, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | |
| PELICAN INVESTMENT HOLDINGS GROUP, LLC, a Delaware Limited Liability Corporation, d/b/a AAP, | |
| Defendant. | |

## DEFENDANT, PELICAN INVESTMENT HOLDINGS GROUP, LLC, D/B/A AAP'S, MOTION TO DISMISS PLAINTIFF, ELI REISMAN'S, FIRST AMENDED CLASS ACTION COMPLAINT AND MOTION TO STRIKE CLASS ACTION ALLEGATIONS

Defendant, Pelican Investment Holdings Group, LLC, d/b/a AAP ("AAP"), by and through undersigned counsel, hereby files this Motion to Dismiss Plaintiff, Eli Reisman's ("Plaintiff"), First Amended Class Action Complaint ("Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion to Strike the class action allegations contained therein under Federal Rules of Civil Procedure 12(f) and 23.

### I.      INTRODUCTION.

Through mere conclusory allegations, unsupported facts, and false information, Plaintiff alleges that AAP violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") when some unidentified person(s), allegedly affiliated with AAP made "at least three" phone calls to Plaintiff's cellular telephone ending in 8097.  *See* Amended Complaint ¶ 15 [D.E. 12].  Plaintiff also alleges that he did not provide consent to be contacted by AAP and that he, "has never signed

up for, has never inquired about, and has never used[ ] Defendant's services [*sic*]."[1]  *See* Amended

Complaint ¶¶ 21 and 22 [D.E. 12].  Plaintiff further alleges that these phone calls were made using

an automatic telephone dialing system ("ATDS") for non-emergency purposes to his cellular

telephone.  At all times relevant, Plaintiff claims his cellular telephone number was on the Federal

Do Not Call Registry.

## II.     MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain

statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S.

662, 677-678 (2009).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation."  *Id.* at 678 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice" in meeting the standard required by Rule 8.  *Id.*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim of relief that is plausible on its face."  *Id.* at 678.  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations,

a plaintiff's obligation to provide the 'grounds of his entitlement to relief' requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]"

*Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

---

[1]  Despite his representations to the contrary, it will ultimately be established that Plaintiff consented and opted-in to being contacted at the number ending in 8097 under the false identification of Melvin Kahn, in order to bring this lawsuit under false pretenses.  Plaintiff's counsel has been made aware of Plaintiff's misrepresentations and has been provided evidence by undersigned counsel as to same prior to the filing of this Motion to Dismiss.

"Factual allegations must be enough to raise a right to relief above the speculative level…" *Id.* at 555 (internal citation omitted).  Courts may not assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that the defendants have violated the…law[] in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, [the complaint] 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557)).

**A. Plaintiff fails to sufficiently state a cause of action for which relief can be granted.**

Plaintiff merely alleges that, "Defendant has placed at least three calls to Plaintiff's cellular telephone… including at least two calls using a prerecorded or artificial voice." *See* Amended Complaint ¶ 15 [D.E. 12].   However, Plaintiff fails to provide any factual basis that the alleged telephone calls were made by AAP, came at the direction of AAP or that AAP had anything to do with them. *See* Amended Complaint generally [D.E. 12].  To the contrary, Plaintiff merely states the first names of two (2) alleged agents without any assertions as to whom the alleged agents worked for and/or directed the agents to make the alleged calls. *See* Amended Complaint ¶¶ 16 and 17 [D.E. 12].  As such, the Amended Complaint fails to assert if Plaintiff is alleging that AAP made the alleged calls or if Plaintiff is alleging vicarious liability against AAP because the alleged calls were made by an unidentified third party. *See* Amended Complaint generally [D.E. 12].

This is arguably the most significant material allegation regarding the entire Amended Complaint.  Realistically, these purported telephone calls could have come from anyone. Moreover, just because one alleged phone call may have originated with AAP, Plaintiff cannot make the illogical leap that every phone call he claims he received was tied to AAP.  Overall, Plaintiff fails to provide any factual support as to the alleged origination of the "unwanted" calls.

Accordingly, Plaintiff's Amended Complaint fails to set forth the ultimate facts with sufficient clarity to allow AAP to fully understand the specific actions against it, to provide an intelligent answer and to formulate a proper defense.  Therefore, Plaintiff's Amended Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

### III.    MOTION TO STRIKE CLASS ALLEGATIONS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(F) AND 23.

In the event that Plaintiff's TCPA claims somehow survive dismissal (which they should not), the Court should nevertheless strike Plaintiff's faulty class definitions and other class related allegations from the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(f) and 23.

Under Rule 12(f), courts may strike "any redundant, immaterial, impertinent, or scandalous matter" from pleadings. "Immaterial" matter "has no essential or important relationship to the claim for relief … being pleaded," and "'[i]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (*quoting* 5 Wright & Miller, Federal Prac. & Proc. § 1382 (1990)), *rev'd on other grounds,* 510 U.S. 517 (1994); *see also Holland v. Sebelius*, 2015 WL 13691436, at *4, n.2 (N.D. Ga. May 12, 2015), *report and rec. adopted*, 2015 WL 13691883 (June 4, 2015) (*citing Fantasy* with approval).  A motion to strike is particularly appropriate where allegations are prejudicial. *M.W. v. Ford Motor Co*., 2015 U.S. Dist. LEXIS 139182, at *4-5 (striking irrelevant and prejudicial allegations from complaint).  Furthermore, federal courts are required to address class certification "[a]t an early practicable time."  *See* Federal Rule of Civil Procedure 23(c)(1)(A).

"The class action is an 'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (*quoting Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)).  "To come within the exception, a

party seeking to maintain a class action must affirmatively demonstrate time," and if a court determines that the prerequisites of Rule 12(f) cannot be satisfied, it may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." *See* Federal Rules of Civil Procedure 23(c)(1)(A) and 23(d)(1)(D).

As such, class allegations may be properly stricken at the pleadings stage pursuant to Federal Rules of Civil Procedure 12(f) and 23 where, as here, "it is facially apparent from the pleadings that there is no ascertainable class." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007); *see also Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997) (recognizing that  propriety of class certification may be "readily apparent" from the face of the complaint); *see also Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 701 (M.D. Ga. 2012) (striking class allegations where pleadings did not indicate, and discovery would not prove, that a class action could be certified); *see also MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co.*, 755 F. Supp. 2d 1205, 1207 (M.D. Fla. 2010) ("Where the propriety of a class action procedure is plain from the initial pleadings, a district court may rule on the issue prior to the filing of a motion for class certification"); *see also Pepka v. Kohl's Dep't Stores, Inc.*, 2016 WL 8919460, at *1-5 (C.D. Cal. Dec. 21, 2016) (striking class  allegations in a TCPA case which "necessarily involve[d] individualized inquiries"); *see also Monteferrante v. Williams–Sonoma, Inc.,* 241 F. Supp. 3d 264, 269 (D. Mass. 2017) ("a court may strike class allegations that plainly encompass individuals whose claims are barred"); *see also Earnest v. Gen. Motors Corp.,* 923 F. Supp. 1469, 1473 (N.D. Ala. 1996) (granting motion to strike class definition that was overly "broad, amorphous, and vague").

The pleadings, including allegations contained within the Amended Complaint, govern the scope of discovery.  *See* Federal Rule of Civil Procedure 26(b)(1).  Thus, in a TCPA case, permitting a facially uncertifiable class to proceed to discovery can result in a defendant being

required to respond to burdensome and expensive discovery regarding every call it made during the class period on the grounds that each call could potentially be a TCPA violation, even though a class that broad could never be certified under Federal Rule of Civil Procedure 23. *Twombly*, 550 U.S. 544, 558-59 (emphasizing the expense and burden of discovery in class actions and stressing that neither "careful case management," nor "careful scrutiny of the evidence at the summary judgment stage," will protect defendants from incurring enormous discovery costs); *see also Christian v. Generation Mortg. Co*., 2014 U.S. Dist. LEXIS 127767, at *2 (N.D. Ill. Sept. 12, 2014) (acknowledging the burden and expense imposed by discovery in class actions).

### A. Plaintiff's proposed class definitions should be stricken because they are facially overbroad, and the proposed classes are uncertifiable.

In the instant matter, it is axiomatic that a putative "class must not be defined so broadly that it encompasses individuals who have little connection with the claim being litigated; rather, it must be restricted to individuals who are raising the same claims or defenses as the representative." *See* 7A Wright & Miller, Federal Prac. & Proc. § 1760 (3d ed. 2005); *see also Walewski v. Zenimax Media, Inc.,* 502 F.App'x 857, 861 (11th Cir. 2012) (*per curiam*) (affirming denial of class certification where proposed class definition "impermissibly include[d] members who ha[d] no cause of action as a matter of law"). In this case, Plaintiff's proposed class definitions include the following:

> *Prerecorded Class: All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendants, or anyone on Defendant's behalf, (2) placed a call using an artificial or prerecorded voice, (3) to said person's cellular telephone number, (4) for the purpose of encouraging the purchase, or rental of, or investment in, Defendant's property, goods, or services.*

> *Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action: (1) were sent a phone call by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of advertising and/or promoting and/or*

*soliciting Defendant's products and services.  See* Amended Complaint ¶ 32 [D.E. 12].

These proposed definitions are facially overbroad and the proposed classes uncertifiable because Plaintiff does not sufficiently exclude potential class members.  Specifically, Plaintiff fails to exclude persons that: (1) consented to be called (*i.e.,* provided "prior express invitation or permission"), (2) have an "established business relationship" with AAP, or (3) did not use their phone for "residential" purposes. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. §§ 64.1200(c)(2), 64.1200(f)(5) & 64.1200(f)(14) (no DNC violation for calls made with the "prior express invitation or permission" of recipient or where recipient has an "established business relationship" with the caller); *see also Abante Rooter,* 2017 WL 733123, at *9 (Section 227(c) "applies to TCPA violations based on calls made to residential telephone subscribers, not cellular telephones"); *see also Licari Family Chiropractic Inc. v. eClinical Works, LLC*, 2019 WL 7423551, at *3–5 (M.D. Fla. Sept. 16, 2019) (denying class certification in TCPA case where proposed class did not exclude individuals who solicited the fax in question and therefore had no claim).  Accordingly, Plaintiff's proposed class definitions should be stricken because they are overbroad and uncertifiable.

**B.  Plaintiff's proposed class definitions should be stricken because common questions of law and fact would not predominate.**

Federal Rule of Civil Procedure 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]"  To meet this requirement, common questions must "present a significant aspect of the case" and "can be resolved for all members of the class in a single adjudication."   *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 695 (N.D. Ga. 2003) (*quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)). As such, various courts have recognized that proposed TCPA class definitions (similar to Plaintiff's definitions) that would require individualized factual and legal inquiries, are properly stricken at the

pleadings stage.   *Pepka*, 2016 WL 8919460, at *4; *see also Dorfman v. Albertson's LLC*, 2020 WL 86192, at *5 (D. Idaho Jan. 7, 2020) (granting TCPA defendant's pre-discovery motion to deny class certification where individualized inquiries predominate).

Under Federal Rule of Civil Procedure 23(a),

> *One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.*

Additionally, Rule 23(b) has three requirements, one of which is at issue here, i.e., whether "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *See* Federal Rule of Civil Procedure 23(b)(3).

"[A] named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'"  *Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1992) (*quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 180 (2d Cir. 1990), *abrogated by Microsoft Corp. v. Baker,* 137 S. Ct. 1702, 198 L. Ed. 2d 132 (2017)). Therefore, "[w]here it is predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative." *Koos v. First Nat. Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974).  In such cases, "[t]he fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011). These concerns exist not only at the trial level but also extend to the potential of an adverse decision

on standing on appeal. *S. Ferry LP No. 2 v. Killinger*, 271 F.R.D. at *659 (W.D. Wash. 2011) ("Even if the Court were to conclude that the assignments cured Metzler's standing deficiency, the Court of Appeals could hold otherwise. Metzler's standing presents a unique legal issue that could ultimately severely prejudice the class."); *In re IMAX Sec. Litig.*, No. 06 Civ. 6128, 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009) (holding investment advisor was an atypical and inadequate class representative, regardless of whether assignments cured its deficient standing, because its standing issues "could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal"); *In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009) (holding investment advisor did not satisfy the adequacy or typicality requirements, because "even if [the] Court held that the assignment was sufficient to cure the lack of standing, the Court of Appeals could hold otherwise").

In the instant matter, Plaintiff expressly consented and opted-in to being contacted at the number ending in 8097 under the false identification of Melvin Kahn, in order to bring this lawsuit under false pretenses. The fact that Plaintiff gave a false name is irrelevant in regard to a consent analysis because Plaintiff is the subscriber for that phone number and has the authority (or at least the apparent authority) to consent. Persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary. As such, evidence that the call recipient had provided his or her cell phone number is sufficient to establish that the recipient gave prior express consent to be called. *See Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1224 (S.D. Fla. 2014); *see also Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242 (11th Cir. 2014); *Johnson v. Credit Prot. Ass'n, L.P.,* No. 11–80604–CIV, 2012 WL 5875605, at *4 (S.D. Fla. Nov. 20, 2012) (cell phone number given to cable provider); *Cavero v. Franklin Collection Serv., Inc.,* No. 11–22630–

CIV, 2012 WL 279448, at *3 (S.D. Fla. Jan. 31, 2012) (finding prior express consent where the original creditor provided affidavits and business records showing plaintiff provided his cell phone number).

This legal issue surrounding express consent under false pretenses is unique to Plaintiff and will undoubtedly become the primary focus of the litigation because it is a complete defense to Plaintiff's TCPA claims.  Therefore, Plaintiff is atypical of the proposed class members and inadequate to fairly represent the proposed classes because his TCPA claims are based upon the validity of his expressly provided consent under false pretenses.

The court is not required to go so far as to decide that the unique issue actually divests the class representative of standing. *Koos*, 496 F.2d at 1164–65 (holding the question is merely whether it is "predictable that a major focus of the litigation will be on an arguable defense unique to the named plaintiff or a small subclass"); *see also Hanon*, 976 F.2d 508 (focusing on whether "there is a danger that absent class members will suffer"); *CE Design Ltd.,* 637 F.3d at 726 (observing it is enough if there is a "fear ... that the named plaintiff will become distracted"). "The merits of the issue unique to the named plaintiff generally are not to be resolved in ruling on class certification. It is sufficient that it is arguable that the named plaintiff's individual claim would be defeated." *Gilmore v. Sw. Bell Mobile Sys., LLC.,* No. 01 C 2900, 2002 WL 548704, at *3 (N.D. Ill. Apr. 8, 2002); *see also Al Haj v. Pfizer Inc.*, No. 17 C 6730, 2020 WL 1330367, at *4 (N.D. Ill. Mar. 23, 2020) ("While it is possible for plaintiff to prevail at trial, her assertion misses the point of the adequacy inquiry.  A defense unique to a proposed class representative need not be a sure bet to defeat adequacy; rather, it need only be 'arguable' ... and 'substantial.'").

There are a multitude of other TCPA class action claims that have been consistently decided against class certification.  For example, in *Bridge v. Credit One Fin.*, the plaintiff filed a

class action suit under the TCPA, alleging that the defendant had used an auto-dialer to place calls to his cellular phone without his consent. 294 F. Supp. 3d 1019 (D. Nev. 2018).  However, there was a "significant issue ... regarding the manner by which [the plaintiff] accessed Credit One's system," specifically, there was evidence that the plaintiff had used his cellular phone to call Credit One in relation to his mother's account and that Credit One account holders agreed to be contacted at the phone numbers they used to contact Credit One.  *Id.* at 1034.  The court found these "disputed issues ... raise[d] a significant danger that this litigation will focus on issues and defenses unique to the plaintiff."  *Id.*  The court held that the plaintiff was "atypical of the class, because of the danger that litigation of the TCPA claim will become preoccupied with defenses and issues unique to" him, and denied class certification.  *Id.*

Similarly, in *Banarji v. Wilshire Consumer Capital, LLC*, another TCPA case, there were facts "unique" to the plaintiff and "perhaps a small subset of the class." No. 14-CV-2967-BEN (KSC), 2016 WL 595323, at *3 (S.D. Cal. Feb. 12, 2016).  There, the plaintiff's father had given plaintiff's number to the defendant and represented it was his own, and there was a question of whether "based on the circumstances of how the Banarji family looks after one another, Plaintiff's father may be a non-subscriber customary user of the phone line, which would give him authority to consent to receiving robocalls on that line."  *Id.*  The court found that "the majority of the proposed class may suffer as plaintiff will be engrossed with disputing WCC's arguments regarding Plaintiff's individual case" and granted the defendant's motion to deny class certification.  *Id.*  (*citing Hanon*, 976 F.2d 497 at 508).

Likewise, in *Quality Mgmt. & Consulting Servs., Inc. v. SAR Orland Food Inc.*, No. 11 C 06791, 2013 WL 5835915 (N.D. Ill. Oct. 30, 2013), the court again denied class certification based on issues unique to the class representative. The plaintiff sued under a provision of the TCPA that

prohibits the sending of "unsolicited" fax advertisements unless the sender can show: (1) the recipient consented or (2) there was an "established business relationship" between the sender and recipient and a valid opt-out notice on the fax. *Id.* at *5. The parties disputed how the third-party advertising company had compiled its list of fax recipients, which included the plaintiff. *Id.* at *2. The defendant, a restaurant, claimed it had collected business cards from nearby businesses and for a VIP dinner and raffles, then sent that information to the third-party advertising company, which sent faxes to those contacts. *Id.* at *1. The third-party advertising company had in its possession the business card of plaintiff's owner, who was also the company's sole employee. *Id.* The court held that this "business-relationship defense as applied to" the class representative was "distinguishable from the possible application of the defense to the class as a whole," and denied class certification due to lack of typicality and adequacy. *Id.* The court further emphasized that the plaintiff had failed to meet its burden on class certification, "in urging the Court to disregard Camasta's business card, Quality Management is not owning-up to the fact that the burden at the class-certification stage is its own... [I]t was Quality Management's burden to demonstrate that its claim is typical and that it is an adequate class representative." *Id.*

Finally, in a very recent TCPA case, class certification was denied because there was a highly contested dispute as to whether the subject phone that received the unwanted phone calls was a residential phone or a business phone. Plaintiff argued that the issue is not unique to him but, rather, pertains to defendant's affirmative defense of consent. However, the court found to the contrary, and determined that whether the subject phone is a residential phone number is something plaintiff must prove at trial. Therefore, this was a unique legal issue to plaintiff that would likely predominate over common questions at trial, certification denied due to lack of typicality and adequacy. *Mattson v. New Penn Fin., LLC,* No. 3:18-CV-00990-YY, 2021 WL

1406875, at *3 (D. Or. Mar. 8, 2021), *report and recommendation adopted in part sub nom.*
*Mattson v. New Penn Fin., LLC*, No. 3:18-CV-00990-YY, 2021 WL 2888394 (D. Or. July 9,
2021).

Just like the few representative cases listed above shows, in this matter, class certification
needs to be denied because Plaintiff is atypical of the proposed class members, inadequate to fairly
represent the proposed classes and because his unique legal issue will undoubtedly predominate
over the lawsuit.

**C. Plaintiff's proposed class definitions should be stricken because they are an improper fail-safe.**

A court may not certify a "fail-safe class," which is a class that is "defined in terms of the
legal injury." *In re Nexium Antitrust Litig.,* 777 F.3d 9, 22 (1st Cir. 2015); *see also Randleman v.*
*Fidelity Nat'l Title Ins. Co*., 646 F.3d 347, 352 (6th Cir. 2011) (explaining "improper fail-safe
class" exists where "[e]ither class members win or, by virtue of losing, they are not in the class,
and, therefore, not bound by the judgment."); *see also Kamar v. RadioShack Corp.*, 375 F. App'x.
734, 736 (9th Cir. 2010) (noting that a proposed class is fail-safe, where class definition is "one
that determines the scope of the class only once it is decided that a class member was actually
wronged" and that "[t]he fail-safe appellation is simply a way of labeling the obvious problems
that exist when the class itself is defined in a way that precludes membership unless the liability
of the defendant is established."); *see also Messner v. Northshore Univ. HealthSystem, Inc*., 669
F.3d 802, 825 (7th Cir. 2012) ("The problem posed by class members whose claims may fail on
the merits for individual reasons is the obverse of a different problem with class definition: the
problem of the 'fail-safe' class: one that is defined so that whether a person qualifies as a member
depends on whether the person has a valid claim. Such class definition is improper because a class
member either wins or, by virtue of losing, is defined out of the class and is therefore not bound

by the judgment."); *see also Dixon v. Monterrey Fin. Servs., Inc.*, 2016 U.S. Dist. LEXIS 111687, at \*4-5 (N.D. Cal. Aug. 22, 2016) (striking a class definition as an improper fail-safe because "a determination of whether a person is a member of the class is dependent on whether he/she prevails on the merits of the TCPA claim...").

Moreover, a fail-safe class is one that is defined according to the elements or merits of the underlying class claims, rather than on some objective criteria. *Van Lith v. iHeartmedia & Entertainment, Inc.,* No. 1:16-CV-066, 2016 U.S. Dist. LEXIS 96853, at \*15-16 (E.D. Cal. July 25, 2016);  (striking a class because it is the job of the plaintiff, not the court, to define a proper class); *see also Sauter v. CVS Pharmacy, Inc*., No. 2:13-CV-846, 2014 U.S. Dist. LEXIS 63122, 2014 WL 1814076, at \*8 (S.D. Ohio May 7, 2014) (holding that a class definition was a fail-safe because it included "only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS and thus consisted solely of persons who can establish that defendant violated the TCPA").  Fail-safe class definitions are therefore commonly struck at the pleadings stage because they are uncertifiable on their face.  *Van Lith,* 2016 U.S. Dist. LEXIS 96853, at \*15-16; *see also Olney v. Job.com, Inc.,* No. 1:12-cv-1724, 2013 U.S. Dist. LEXIS 141339 (E.D. Cal. Sept. 30, 2013) (holding that the original definition of a class in a TCPA case was an improper fail-safe).

Furthermore, in a TCPA case, permitting a fail-safe class to proceed to discovery can also result in a defendant being required to respond to discovery regarding every call it made during the class period on the grounds that each call could potentially be a TCPA violation, even though a class that broad could never be certified.  *Medina v. Enhanced Recovery Co., Ltd. Liab. Co.,* No. 15-14342-CIV, 2017 U.S. Dist. LEXIS 186651 (S.D. Fla. Nov. 9, 2017) (requiring a defendant who neglected to challenge a fail-safe class definition at the pleading stage to produce every record

of consent for every dialer call it made during the class period and every complaint made by any consumer). Plaintiff's proposed class definitions are simply a recitation of the elements of a TCPA claim regarding calls made to cellular telephones. *See* Amended Complaint ¶ 32 [D.E. 12]. Therefore, Plaintiff's proposed class definitions are blackletter examples of a fail-safe because they merely recite the elements of a cause of action under the guise of a class definition.

Accordingly, the Court should strike Plaintiff's insufficient class definitions and other class related allegations from the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(f) and 23.

**IV.    CONCLUSION.**

For the reasons set forth above, Defendant, Pelican Investment Holdings Group, LLC, d/b/a AAP, respectfully moves this Court to enter an Order dismissing Plaintiff, Eli Reisman's, First Amended Class Action Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), to strike the class action allegations therein under Federal Rules of Civil Procedure 12(f) and 23, and for such further relief as this Court may deem proper.

Dated:  August 9, 2021                    Respectfully submitted,


                                          By:___*/s/ Jason S. Weiss*_____
                                             Jason S. Weiss
                                             **WEISS LAW GROUP, P.A.**
                                             5531 N. University Drive, Suite 103
                                             Coral Springs, FL 33067
                                             Phone: 954.573.2800
                                             Fax: 954.573.2798
                                             jason@jswlawyer.com
                                             *Counsel for Defendant, Pelican Investment*
                                             *Holdings Group, LLC, d/b/a AAP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of August, 2021, I caused a copy of the foregoing document to be served via ECF on all parties entitled to receive notice.


By: /s/ *Jason S. Weiss*
       Jason S. Weiss
      *Counsel for Defendant, Pelican Investment*
      *Holdings Group, LLC, d/b/a AAP*